ORIGINAL

FILED

FEB 2 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Paul Adams (Bar No. 42,146)
    THE ADAMS LAW FIRM
2   California Address
    550 West C Street, Suite 2000
3   San Diego, California 92101
    Telephone: 619-241-4810
4   Facsimile: 619-955-5318

5
    Paul Adams
6   THE ADAMS LAW FIRM
    901 Rio Grande Blvd. NW, Suite H262
7   Albuquerque, New Mexico 87104
    (505) 222-3145
8   (505) 222-3147 facsimile

E-filing

9

10                  **UNITED STATES DISTRICT COURT**

11           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**PJH**

12  MASTER REPLICAS, INC., a California
    corporation, now known as Corgi International      Case No.:
13  Ltd.,

**CV  08  1011**

14                   Plaintiff,
                                                  **NOTICE OF**
15  v.                                            **REMOVAL**

16  LEVITATION ARTS, INC. a Kentucky
    corporation; KAREN A. SHERLOCK, an
17  individual; MICHAEL F. SHERLOCK, an
    individual; and Does 1-100, Inclusive,

18
                     Defendants.
19

20

21

22

23

24

25

26

27

28

1    Defendants, Levitation Arts, Inc., a Texas corporation, Karen A. Sherlock, an

2    individual, and Michael F. Sherlock, an individual, hereby file this Notice of Removal of

3    the above-described action to the United States District Court for the Northern District of

4    California from the Superior Court of California for the County of San Francisco, where

5    the action is now pending and state:

6    1.    This cause was commenced in the Superior Court of California, for the

7    County of San Francisco, on January 4, 2008. On January 25, defendants acknowledged

8    receipt of service. A copy of Plaintiff's Complaint setting for the claim for relief under

9    which the action is based was received on January 9, 2008.

10    2.    The action is a civil action for recision, fraud, negligent misrepresentation,

11    breach of written contract, breach of the implied covenants of good faith and fair dealing,

12    unjust enrichment, and constructive trust; the United States District Court for the Northern

13    District of California has jurisdiction by reason of the diversity of citizenship of the

14    parties.

15    3.    The matter in dispute exceeds $75,000, exclusive of interest and costs.

16    4.    At the time of the commencement of this action in State Court, and since

17    that time, Plaintiff, Master Replicas, Inc., was and is now, a citizen of the State of

18    California. Defendant Levitation Arts was formed as a Kentucky Corporation and

19    relocated to the State of Texas, under applicable Texas law (Section 10.103 Texas

20    Business Organizations Code) te corporation was converted to a Texas corporation on

21    October 19, 2007 and therefore at the time of commencement of this action was and still

22    is, a corporation incorporated and existing under and by virtue of the laws of the State of

23    Texas, having its principal place of business in Boerne, Texas. The Defendant Michael

24    Sherlock, at the time the action was commenced and at the present time, was and still is a

25    citizen of Texas. The Defendant Karen Sherlock at the time the action was commenced

26    and at the present time, was and still is a citizen of the State of Texas. None of the

27    Defendants is a citizen of the state in which the action was brought.

28

1        5.    A copy of the Acknowledgment of Receipt of Summons for each Defendant

2    and a copy of the Complaint served upon Defendants as described above is filed with this

3    Notice.

4        6.    Defendants will give written notice of the filing of this Notice as required

5    by 28 U.S.C. § 1446(d).

6        7.    A copy of this notice will be filed with the Clerk of the Superior Court of

7    the State of California for the County of San Francisco, as required by 28 U.S.C. §

8    1446(d).

9        WHEREFORE, Defendants request that this action proceed in this Court as an

10   action properly removed to it.

11

12       Dated: Feb. 15, 2008          THE ADAMS LAW FIRM

13

14                            By

15                               Paul Adams, (Bar No. 42,146)
                            901 Rio Grande Blvd. NW

16                               Suite H262
                            Albuquerque, NM 87104

17                               (505) 222-3145

18                             Attorney for Defendants

19

20

21

22

23

24

25

26

27

28

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Bruce Isaacs, Esq. SBN 100926<br>Carol Tenney, Esq. SBN 193813<br>WYMAN & ISAACS LLP<br>8840 Wilshire Blvd., Second Floor<br>Beverly Hills, CA 90211<br>TELEPHONE NO.: (310) 358-3221   FAX NO. *(Optional)*:  (310) 358-3224<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: Plaintiff | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO | |
|---|---|
| STREET ADDRESS: 400 McAllister Street<br>MAILING ADDRESS: Same as Above<br>CITY AND ZIP CODE: San Francisco, CA 94102<br>BRANCH NAME: CIVIC CENTER COURTHOUSE | |

| PLAINTIFF/PETITIONER: MASTER REPLICAS, INC., now known as Corgi International Ltd.<br><br>DEFENDANT/RESPONDENT: LEVITATION ARTS, INC., KAREN A. SHERLOCK and MICHAEL F. SHERLOCK | |
|---|---|

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CGC-08-470739 |
|---|---|

TO *(insert name of party being served):* LEVITATION ARTS, INC.

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: January **25**, 2008

BRUCE ISAACS, ESQ.
(TYPE OR PRINT NAME)

▶ *Bruce Isaac /DB*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [X] A copy of the summons and of the complaint.
2. [X] Other: *(specify):* Notice of Errata re Exhibits Inadvertently Omitted From Complaint, Notice to Plaintiff Re Case Management Conference, Judicial Mediation Program, Blank Stipulation to Alternative Dispute Resolution, Blank Case Management Statement and Alternative Dispute Resolution (ADR) Program Information Package

*(To be completed by recipient):*
Date this form is signed: _____, 2008

▶

PAUL ADAMS, ESQ.
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)
Attorney for Defendant LEVITATION ARTS, INC.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Legal<br>Solutions<br>Plus | Code of Civil Procedure,<br>§§ 415.30, 417.10 |
|---|---|---|---|

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Bruce Isaacs, Esq. SBN 100926<br>Carol Tenney, Esq. SBN 193813<br>WYMAN & ISAACS LLP<br>8840 Wilshire Blvd., Second<br>Beverly Hills, CA 90211<br>   TELEPHONE NO.: (310) 358-3221  FAX NO. *(Optional):*  (310) 358-3224<br>E-MAIL ADDRESS *(Optional):*<br> ATTORNEY FOR *(Name):* Plaintiff | FOR COURT USE ONLY |

| | |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO<br>   STREET ADDRESS: 400 McAllister Street<br>   MAILING ADDRESS: Same as Above<br>   CITY AND ZIP CODE: San Francisco, CA 94102<br>   BRANCH NAME: CIVIC CENTER COURTHOUSE | |

| | |
|---|---|
| PLAINTIFF/PETITIONER: MASTER REPLICAS, INC., now known as<br>Corgi International Ltd.<br><br>DEFENDANT/RESPONDENT: LEVITATION ARTS, INC., KAREN A.<br>SHERLOCK and MICHAEL F. SHERLOCK | |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>CGC-08-470739 |

TO *(insert name of party being served):* <u>KAREN A. SHERLOCK</u>

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: January <u>25</u>, 2008

<u>BRUCE ISAACS, ESQ.</u>        ▶ _Bruce Isaac /08_
    (TYPE OR PRINT NAME)              (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1.  [X]  A copy of the summons and of the complaint.
2.  [X]  Other: *(specify):* Notice of Errata Re Exhibits Inadvertently Omitted From
      Complaint, Notice to Plaintiff Re Case Management Conference, Judicial
      Mediation Program, Blank Stipulation to Alternative Dispute Resolution,
      Blank Case Management Statement and Alternative Dispute Resolution
      (ADR) Program Information Package

*(To be completed by recipient):*
Date this form is signed: _____, 2008

                         ▶

<u>PAUL ADAMS, ESQ.</u>
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,      (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)       ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)
                                 Attorney for Defendant KAREN A. SHERLOCK

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** |  Legal<br>Solutions<br>Plus | Code of Civil Procedure,<br>§§ 415.30, 417.10 |

Page 1 of 1

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Bruce Isaacs, Esq. SBN 100926<br>Carol Tenney, Esq. SBN 193813<br>WYMAN & ISAACS LLP<br>8840 Wilshire Blvd. Second Floor<br>Beverly Hills, CA 90211<br>   TELEPHONE NO.: (310) 358-3221   FAX NO. *(Optional):*   (310) 358-3224<br>E-MAIL ADDRESS *(Optional):*<br>  ATTORNEY FOR *(Name):* Plaintiff | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO | |
|---|---|
|    STREET ADDRESS: 400 McAllister Street<br>   MAILING ADDRESS: Same as Above<br>   CITY AND ZIP CODE: San Fancisco, CA 94102<br>   BRANCH NAME: CIVIC CENTER COURTHOUSE | |

| PLAINTIFF/PETITIONER: MASTER REPLICAS, INC., now known as<br>Corgi International Ltd.<br><br>DEFENDANT/RESPONDENT: LEVITATION ARTS, INC., KAREN A.<br>SHERLOCK and MICHAEL F. SHERLOCK | |
|---|---|

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CGC-08-470739 |
|---|---|

TO *(insert name of party being served):* MICHAEL F. SHERLOCK

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: January 25, 2008

BRUCE ISAACS, ESQ.        ▶ *Bruce Isaac/DB*
(TYPE OR PRINT NAME)        (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [X] A copy of the summons and of the complaint.
2. [X] Other: *(specify):* Notice of Errata Re Exhibits Inadvertently Omitted From
      Complaint, Notice to Plaintiff Re Case Management Conference, Judicial
      Mediation Program, Blank Stipulation to Alternative Dispute Resolution,
      Blank Case Management Statement and Alternative Dispute Resolution
      (ADR) Program Information Package

*(To be completed by recipient):*
Date this form is signed: _____, 2008

                ▶

PAUL ADAMS, ESQ.
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,      (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)
                                      Attorney for Defendant MICHAEL F. SHERLOCK
                                               Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Legal<br>Solutions<br>Plus | Code of Civil Procedure,<br>§§ 415.30, 417.10 |
|---|---|---|---|

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

| |
|---|
| **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LEVITATION ARTS, INC., a Kentucky corporation; KAREN
A. SHERLOCK, an individual; MICHAEL F. SHERLOCK, an
individual; and Does 1-100, Inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MASTER REPLICAS, INC., a California corporation, now
known as Corgi International Ltd.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO
400 McAllister Street
San Francisco, CA  94102

CASE NUMBER:
*(Número del Caso):* 08-470739

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Bruce Isaacs, Esq., SBN 100926          (310) 358-3221
WYMAN & ISAACS LLP
8840 Wilshire Blvd., Second Floor
Beverly Hills, CA  90211

DATE:                        Gordon Park-Li Clerk, by _____, Deputy
*(Fecha)*   JAN - 4 2008                   *(Secretario)*  P. NATT   *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under:  ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

COPY

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]          **SUMMONS**          Code of Civil Procedure §§ 412.20, 465

Legal Solutions Plus

1 | Bruce Isaacs, Esq. SBN 100926
Carol Tenney, Esq. SBN 193813
2 | WYMAN & ISAACS CASE MANAGEMENT CONFERENCE SET
8840 Wilshire Blvd., Second Floor
3 | Beverly Hills, CA 90211
Tele: (310) 358-3221    JUN - 6 2008 - 9:00 AM
4 | Fax:  (310) 358-3224

5 | Attorneys for Plaintiff,    DEPARTMENT 212
MASTER REPLICAS, INC., a California corporation,
6 | now known as Corgi International Ltd.

7

ENDORSED
F I L E D
San Francisco County Superior Court

JAN - 4 2008

GORDON PARK-LI, Clerk
BY: _____ PARAM NATT
Deputy Clerk

8 |          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 |             **FOR THE COUNTY OF SAN FRANCISCO**

10

| | |
|---|---|
| 11 MASTER REPLICAS, INC., a California corporation, now known as Corgi International Ltd., | Case No.:  **CGC-08-470739** |
| 13 | **COMPLAINT FOR:** |
| 14    Plaintiff, | **(1)  RESCISSION;** |
| | **(2)  FRAUD;** |
| 15    vs. | **(3)  NEGLIGENT MISREPRESENTATION;** |
| 16 LEVITATION ARTS, INC., a Kentucky corporation; KAREN A. SHERLOCK, an individual; MICHAEL F. SHERLOCK, an individual; and Does 1-100, Inclusive, | **(4)  BREACH OF WRITTEN CONTRACT;** |
| 17 | **(5)  BREACH OF THE IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING;** |
| 18 | **(6)  UNJUST ENRICHMENT; and** |
| 19    Defendants. | **(7)  CONSTRUCTIVE TRUST.** |

20

21

22

23

24

25

26

27

28

8\MASTER REPLICAS\ COMPLAINT

1    Plaintiff Master Replicas, Inc., a California corporation, hereby alleges against Defendants

2   Levitation Arts, Inc., Karen A. Sherlock, Michael F. Sherlock and Does 1-100, inclusive, as

3   follows:

4

5                    ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

6   The Parties

7    1.    Plaintiff Master Replicas, Inc. was a corporation organized and existing under and by

8   virtue of the laws of the State of California.  Master Replicas, Inc. was recently acquired by Corgi

9   International Ltd.  For ease of reference, plaintiff Corgi International Ltd., as the successor in

10  interest to Master Replicas, Inc., shall be referred to in this complaint as "MR."

11   2.    MR is informed and believes, and based thereon alleges, that Defendant Levitation

12  Arts, Inc. ("LA") was a corporation existing under the laws of Kentucky in or about June, 2006.

13  MR is now informed and believes, and based thereon alleges, that LA is now a corporation existing

14  under the laws of Texas.

15   3.    LA entered into a Technology Licensing Agreement (the "License Agreement") with

16  MR in or about June, 2006, which License Agreement is the subject of this action.  Pursuant to

17  § 14.6 of the License Agreement, LA consented to the exclusive jurisdiction and venue of the state

18  and federal courts of the State of California.  Attached hereto as Ex. "A," and incorporated herein

19  by this reference, is a true and correct copy of the License Agreement.

20   4.    MR is informed and believes, and based thereon alleges, that Defendants Karen A.

21  Sherlock and Michael F. Sherlock (the "Sherlocks") are individuals who were residing in the state

22  of Kentucky at the time the License Agreement at issue was executed.  MR is informed and

23  believes, and based thereon alleges, that the Sherlocks are now residing in the state of Texas.  MR is

24  further informed and believes, and based thereon alleges, that the Sherlocks are joint CEOs of LA.

25  The Sherlocks executed the License Agreement on behalf of LA.  In addition, the Sherlocks were

26  the corporate officers, directors and/or owners of LA who authorized, directed or in some

27  meaningful sense actively participated in the wrongful conduct alleged below and therefore they

28  have personal liability for the intentional torts, in particular fraud, which they have committed in

1  their corporate capacity. <u>Frances T. v. Village Green Owners Association</u>, 42 Cal.3d 490, 503-504

2  (1986), <u>PNC, Inc. v. Kadisha</u>, 78 Cal.App.4th 1368, 1381 (2000), <u>Wyatt v. Union Mortgage Co.</u>, 24

3  Cal.3d 773, 785 (1979), <u>Spahn v. Guild Industries Corp.</u>, 94 Cal.App.3d 143, 157, fn.9 (1979).

4      5.    MR is informed and believes, and based thereon alleges, that LA is the alter ego of

5  the Sherlocks; that LA was not and is not adequately capitalized; that a unity of interest exists

6  between the Sherlocks, on the one hand, and LA, on the other; and that an injustice will result if the

7  legal fiction of LA is not disregarded and if individual liability is not imposed on the Sherlocks.

8      6.    The true names and capacities of Defendants sued as Does 1 through 100, inclusive,

9  are unknown to MR at this time, who therefore sues these Defendants by such fictitious names. MR

10  will seek leave to amend this Complaint to insert the true names and capacities of the fictitiously

11  named Defendants when they are ascertained. MR is informed and believes, and based thereon

12  alleges, that each of the Defendants sued as Does 1 through 100 is in some manner responsible or

13  liable for the acts, occurrences and damages alleged in this Complaint.

14      7.    MR is informed and believes, and based thereon alleges, that at all times relevant to

15  this Complaint, the above-named Defendants and the Doe Defendants, and each of them, were the

16  agents, servants, employees, principals, partners, joint venturers, successors-in-interest,

17  predecessors-in-interest, co-venturers or co-conspirators of the remaining co-Defendants and, in

18  doing the acts alleged herein, each was acting within the course and scope of such agency, service,

19  employment, partnership, interest, venture or conspiracy with the authorization, ratification,

20  approval and/or agreement of their principals or the remaining co-Defendants.

21

22  <u>The License Agreement</u>

23      8.    MR is a designer, manufacturer and retailer of collectible toys based on popular film

24  franchises such as "Star Wars," James Bond, "Pirates of the Caribbean" and other well known

25  entertainment properties.

26      9.    In or about 2004, MR was introduced to the Sherlocks, who represented that they

27  owned, controlled or possessed certain rights (including but not limited to patents) to certain

28  magnetic levitation technology (the "Levitation Technology" or "LA's Levitation Technology")

1 │ which could be used to create toys and games with levitating parts. Briefly, the Levitation

2 │ Technology is based on the use of powerful magnets which produce a levitating effect.[1]

3 │     10.     MR was interested in the possibility of using the Levitation Technology to create

4 │ collectible toys with levitating parts, so MR began negotiating with the Sherlocks to license the

5 │ Levitation Technology.

6 │     11.     In or about June, 2006, LA, by and through the Sherlocks, in their capacity as

7 │ officers of LA, entered into the License Agreement referenced above with MR.

8 │     12.     The License Agreement granted MR a license to the Levitation Technology for an

9 │ initial term of 6 years. See Ex. "A," § 2.1.

10 │     13.     The License Agreement required MR to make an advance royalty payment to LA of

11 │ $180,000. See Ex. "A," § 4.1.

12 │     14.     MR paid the advance royalty payment of $180,000 to LA.

13 │     15.     Despite MR exercising due diligence (as required pursuant to § 3.1 of the License

14 │ Agreement) and despite its good faith efforts, MR has been unable to develop any products

15 │ employing the Levitation Technology because:

16 │     (a)     LA has failed to provide a working prototype model of the Levitation

17 │ Technology;

18 │     (b)     LA has failed to provide its full cooperation, assistance, consultation and

19 │ advice relating to the Levitation Technology;

20 │     (c)     LA has failed to provide MR with access to LA's third party consultants,

21 │ vendors, manufacturers or agents; and

22 │     (d)     LA has failed to provide MR with accurate and complete copies of all Know-

23 │ How and Confidential Information (as those terms are defined in the License Agreement).

24 │

25 │

26 │

27 │

28 │ [1] See http://www.youtube.com/watch?v=sgYUOUfPm8c&NR=1 and http://levitationarts.com/
    for LA's video depictions of the Levitation Technology.

1  The Patents and Other Rights

2      16.    Pursuant to § 4.1 of the License Agreement, $100,750 of the advance royalty

3  payment MR made to LA was designated to be used by LA to purchase for itself the rights to

4  levitation technology then owned by the University of British Columbia ("UBC"). MR is informed

5  and believes, and based thereon alleges, that LA did use $100,750 of the advance royalty payment

6  to purchase UBC's rights to its levitation technology (the "UBC Levitation Technology Rights")

7  and currently LA owns the UBC Levitation Technology Rights.

8      17.    UBC's Levitation Technology Rights at the time the License Agreement was

9  executed included U.S. Patent No. 5,168,183 (hereinafter "Patent '183"), and additional patent

10  applications pending throughout the world (hereinafter the "Pending Patent Applications") for

11  additional UBC owned levitation technology entitled "Magnetic Levitation Apparatus." See Ex.

12  "A," §§ 4.1, 7.1 and Ex. B thereto (which contains a list of all patent rights which are the subject of

13  the License Agreement).

14      18.    MR is informed and believes, and based thereon alleges, that subsequent to the

15  execution of the License Agreement by LA and MR, and payment of the advance royalty by MR,

16  LA purchased Patent '183 from UBC and that Patent '183 is currently owned by LA.

17      19.    MR is informed and believes, and based thereon alleges, that subsequent to the

18  execution of the License Agreement by LA and MR, and payment of the advance royalty by MR,

19  LA also purchased the Pending Patent Applications for the "Magnetic Levitation Apparatus" from

20  UBC and that the Pending Patent Applications are also currently owned by LA.

21

22  The Failure of Consideration

23      20.    In or about 2006, LA, by and through the Sherlocks, sent MR a prototype model (the

24  "First Prototype") which purported to employ the Levitation Technology. LA sent the First

25  Prototype to MR in order to enable MR to develop products which made use of the Levitation

26  Technology, per the License Agreement.

27      21.    The First Prototype did not work properly and MR was not able to use it to develop

28  products which made use of the Levitation Technology. MR informed LA of this fact.

1    22.    In or about November 2006, LA, by and through the Sherlocks, sent MR a second
2  prototype model (the "Second Prototype") which purported to employ the Levitation Technology.

3    23.    The Second Prototype arrived damaged and likewise did not work.

4    24.    The magnets contained in the Second Prototype had fallen out of position in the
5  Second Prototype during shipping. The placement of the magnets is of critical importance if any
6  device using the Levitation Technology is to levitate properly.

7    25.    MR contacted LA and told the Sherlocks that the magnets in the Second Prototype
8  had fallen out of position during shipping and MR asked LA to provide MR with technical
9  drawings which would show the placement of the magnets so that MR could repair the prototype
10  and begin developing products based on the Levitation Technology.

11    26.    Instead of sending the technical drawings which MR repeatedly requested, LA
12  replied to MR's requests with arguments and accusations, denying responsibility for the fact that the
13  Second Prototype did not work and attempting to blame MR for the failure of the technology to
14  work.

15

16  The Lack of Full Cooperation and Technical Support

17    By Levitation Arts

18    27.    The License Agreement requires LA "to provide Master Replicas with *full*
19  *cooperation, assistance, consultation and advice* relating to the product development and
20  production..." See Ex. "A," § 3.1 (emphasis added).

21    28.    Despite MR's repeated requests, and the requirements of the License Agreement,
22  LA, by and through the Sherlocks, failed and refused to provide the requested technical assistance,
23  including the requested technical drawings.

24    By Levitation Arts' Consultants

25    29.    The License Agreement also requires LA to "cause its third party vendors,
26  manufacturers and agents" (hereinafter, collectively, "LA's Consultants") to provide MR with
27  accurate and complete copies of all "Know-How" and "Confidential Information." See
28  Ex. "A," § 2.2.

1       30.     Know-How is defined in § 1.4 of the License Agreement as all "data of any sort …

2  relating to magnetic levitation and necessary and useful" in implementing the Levitation

3  Technology, and includes the "knowledge, skill, [and] experience" of LA and LA's Consultants.

4  See Ex. "A," § 1.4.

5       31.     Confidential Information is defined in § 1.2 of the License agreement as "any

6  confidential and/or proprietary information" relating to magnetic levitation technology.  See

7  Ex. "A," § 1.2.

8       32.     Because of the failure of the Levitation Technology to work, and because LA failed

9  to provide its full cooperation, assistance, consultation and advice, MR began to request, and

10  repeatedly requested, that LA provide MR with access to LA's Consultants.  LA repeatedly refused

11  such access or put onerous and unreasonable conditions, tantamount to a refusal, on such requested

12  contact.

13       33.     In or about March, 2007, in a final effort to resolve the situation, MR agreed to a

14  meeting with LA and LA's Consultants, in Los Angeles, CA, but the meeting did not accomplish

15  the goal of providing MR with a working prototype employing the Levitation Technology and that

16  LA then sent MR a bill for costs not authorized by the License Agreement.

17

18  Attorneys' Fees

19       34.     Section 14.7 of the License Agreement provides that the prevailing party in any

20  action to enforce any right or remedy under the License Agreement shall be entitled to recover its

21  attorneys' fees, cost and expenses.  See Ex. "A."

22

23  Additional Damages

24       35.     In addition to the initial advance royalty payment of $180,000, in the course of MR's

25  attempts to develop products utilizing the Levitation Technology, MR paid LA additional sums of

26  money, totaling at least $50,000.

27       36.     MR does not have and has never had a working prototype employing the Levitation

28  Technology and never received the contractually required cooperation, consultation and assistance

BI/MASTER REPLICA/ COMPLAINT       7

1    from LA and LA's Consultants, and despite the exercise of due diligence by MR, has never been

2    able to produce any product employing the Levitation Technology.

3

4                                   FIRST CAUSE OF ACTION

5                                      (For Rescission)

6                           (Against Levitation Arts and Does 1 – 50)

7        37.    MR incorporates by reference paragraphs 1 through 36 above as though fully set

8    forth herein.

9        38.    As set forth above, MR entered into the License Agreement with LA and made the

10   advance royalty payment of $180,000 to LA. Prior to entering into the License Agreement, LA

11   made the following material representations:

12               (a)    that LA's Levitation Technology worked;

13               (b)    that LA would provide its full cooperation, assistance, consultation and

14   advice to MR during MR's development of products employing LA's Levitation Technology;

15               (c)    that LA would provide MR with accurate and complete copies of all Know-

16   How and Confidential Information; and

17               (d)    that LA would cause LA's Consultants to provide MR with accurate and

18   complete copies of all Know-How and Confidential Information (collectively, the

19   "Representations" or "LA's Representations").

20       39.    LA's Representations concern a material fact in that the Representations concern the

21   subject matter of the License Agreement, i.e., the Levitation Technology which MR bargained for

22   in order to use in the creation of collectible toys.

23       40.    LA's Representations were false in that:

24               (a)    LA's Levitation Technology does not work;

25               (b)    LA did not provide its full cooperation, assistance, consultation and advice to

26   MR during MR's development of products utilizing LA's Levitation Technology;

27               (c)    LA did not provide MR with accurate and complete copies of all Know-How

28   and Confidential Information; and

1        (d)    LA did not cause LA's Consultants to provide, and LA actually prevented

2   LA's Consultants from providing, MR with accurate and complete copies of all Know-How and

3   Confidential Information. MR is informed and believes, and based thereon alleges, that LA made

4   these false Representations intentionally, negligently or innocently.

5        41.    MR relied on LA's Representations and MR's reliance on LA's Representations was

6   reasonable.

7        42.    As a result of the false Representations set forth above, LA, by its own fault, has

8   caused the consideration of the License Agreement to fail.

9        43.    Accordingly, MR is entitled to rescission and termination of the License Agreement

10  between MR and LA and the restoration of any and all payments, benefits and other consideration

11  paid by MR to LA. MR hereby tenders the return of any consideration it received from LA, if any.

12

13                          SECOND CAUSE OF ACTION

14                                (For Fraud)

15                    (Against All Defendants and Does 51 through 75)

16       44.    MR incorporates by reference paragraphs 1 through 38 above as though fully set

17  forth herein.

18       45.    LA, by and through the Sherlocks, made the material Representations set forth above

19  to MR.

20       46.    LA's Representations were false in that the Sherlocks and LA knew that they did not

21  have the capability to provide MR with functional prototypes which MR would need to create

22  products employing the Levitation Technology. In a November 24, 2006 email from the Sherlocks,

23  on behalf of LA, to Bryan Ono ("Ono"), a employee of MR, the Sherlocks admitted that the First

24  Prototype and Second Prototype which were sent to MR "were built over five years ago by a now-

25  retired engineer" and that LA was only at that point in time engaged in " 'head optimization' R&D

26  – which will yield the info [LA] request[ed] about 'tolerances' " and that LA's "senior engineer"

27  had informed LA that he understands they were concerned about making an optimized prototype

28

BI/MASTER REPLICA/ COMPLAINT                    9

1   but he didn't feel like they can do that yet.  A true and correct copy of the Nov. 24, 2006 email is
2   attached hereto as Ex. "B."

3       47.     LA's Representations regarding causing LA's Consultants to provide MR with full
4   cooperation, assistance, consultation and advice relating to product development were also false in
5   that in a December 13, 2006 letter from the Sherlocks, on behalf of LA, to Ono, the Sherlocks
6   claimed that they were not denying MR direct access to LA's Consultants, but also insisted that they
7   "be the conduit for all correspondence, including any phone conferences, and presents at any
8   meetings."  A true and correct copy of the December 13, 2006 letter is attached hereto as Ex. "C."

9       48.     MR is informed and believes, and based thereon alleges, that at the time LA, by and
10  through the Sherlocks, made the Representations, they knew that the Representations were false.

11      49.     MR is informed and believes, and based thereon alleges, that LA and the Sherlocks
12  made the Representations with the intent to induce MR to rely on the Representations to its
13  detriment and enter into the License Agreement and make the advance royalty payment to LA, in
14  part so that LA would be able to purchase the UBC Levitation Technology Rights.

15      50.     MR reasonably and justifiably relied on the Representations to its detriment.  MR
16  would not have entered into the License Agreement and made the advance royalty payment to LA if
17  MR had known the true facts.

18      51.     As a proximate and foreseeable result of LA's and the Sherlock's conduct, MR has
19  suffered damages according to proof at the time of trial, but at least in the amount of approximately
20  $230,000, together with interest thereon at the maximum allowable legal rate.

21      52.     MR is informed and believes, and based thereon alleges, that when LA and the
22  Sherlocks made the representations, LA and the Sherlocks knew that the representations were false
23  and made a conscious decision to mislead MR as alleged above and, in so doing, acted intentionally
24  and with malice and oppression toward MR, justifying an award of punitive damages, in an amount
25  reasonably related to each defendant's net worth.

26

27

28

BI/MASTER REPLICA/ COMPLAINT                      10

THIRD CAUSE OF ACTION

(For Negligent Misrepresentation)

(Against All Defendants and Does 76 to 100)

53.     MR incorporates by reference paragraphs 1 through 40 above as though fully set forth herein.

54.     LA, by and through the Sherlocks, made the material Representations set forth above to MR.

55.     As set forth above, these Representations were false.

56.     LA and the Sherlocks made the Representations without any reasonable grounds for believing them to be true.

57.     LA and the Sherlocks made the Representations with the intent to induce MR to enter into the License Agreement and to rely on the Representations to its detriment.

58.     MR reasonably and justifiably relied on the Representations to its detriment.  MR would not have entered into the License Agreement and made the advance royalty payment to LA had MR known the true facts.

59.     As a proximate and foreseeable result of LA's and the Sherlocks' conduct, MR has suffered damages according to proof at the time of trial, but in at least the amount of approximately $230,000, together with interest thereon at the maximum allowable legal rate.

FOURTH CAUSE OF ACTION

(For Breach of Written Contract)

(Against Levitation Arts and Does 1 – 50)

60.     MR incorporates by reference paragraphs 1 through 38 above as though fully set forth herein.

61.     As set forth above, LA entered into the License Agreement with MR.

62.     MR has performed all of the covenants and conditions required to be performed by it pursuant to the License Agreement, except those waived, prevented, excused or rendered unnecessary by virtue of LA's breach.

1    63.    Beginning in or about November, 2006 and continuing to the present date, LA has

2 breached the License Agreement by:

3              (a)    failing to deliver Levitation Technology that works;

4              (b)    failing to provide its full cooperation, assistance, consultation and advice to

5 MR in its development of products utilizing the Levitation Technology;

6              (c)    failing to provide MR with accurate and complete copies of all Know-How

7 and Confidential Information; and

8              (d)    failing to cause LA's Consultants to provide MR with accurate and complete

9 copies of all Know-How and Confidential Information.

10    64.    As a direct and proximate result of LA's multiple breaches of contract, MR has been

11 damaged in an amount according to proof at the time of trial, but at least in the amount of $230,000,

12 together with interest thereon at the maximum allowable legal rate.

13

14                         FIFTH CAUSE OF ACTION

15              (For Breach of Implied Covenant of Good Faith and Fair Dealing)

16                   (Against Levitation Arts and Does 1 – 50)

17    65.    MR incorporates by reference paragraphs 1 through 38 above as though fully set

18 forth herein.

19    66.    The License Agreement contains an implied covenant that LA will, at all times, act

20 in good faith and deal fairly with MR and will refrain from any acts which would damage MR or

21 prevent MR from realizing the intended benefits of the License Agreement.

22    67.    By virtue of the wrongdoing set forth above, LA has breached the implied covenant

23 of good faith and fair dealing.

24    68.    As a direct and proximate result of LA's breach of the covenant of good faith and

25 fair dealing, MR has been damaged in an amount according to proof at the time of trial, but at least

26 in the amount of approximately $230,000, together with interest thereon at the maximum allowable

27 legal rate.

28

1

## SIXTH CAUSE OF ACTION

2

(For Unjust Enrichment)

3

(Against All Defendants)

4        69.    MR incorporates by reference paragraphs 1 through 38 above as though fully set

5   forth herein.

6        70.    By virtue of the conduct set forth above, LA and the Sherlocks have been unjustly

7   enriched at the expense of MR in that LA received the advance royalty payment, and used a large

8   portion of that payment for the purchase of UBC's Levitation Technology Rights, including, but not

9   limited to, Patent '183 and the Pending Patent Applications, but MR did not receive Levitation

10   Technology that worked, and MR paid additional amounts to LA and the Sherlocks for development

11   of the Levitation Technology.

12        71.    As a proximate result of LA's and the Sherlocks' conduct, MR has suffered damages

13   in an amount according to proof at the time of trial, but at least in the amount of approximately

14   $230,000, together with interest thereon at the maximum allowable legal rate.

15

16

## SEVENTH CAUSE OF ACTION

17

(For Constructive Trust)

18

(Against All Defendants)

19        72.    MR incorporates by reference paragraphs 1 through 38, and paragraphs 43 through

20   50 above as though fully set forth herein.

21        73.    Pursuant to the License Agreement, § 4.1, $100,750 of the advance royalty payment

22   made by MR to LA was to be used to purchase UBC's Levitation Technology Rights, as set forth

23   above, including, but not limited to, Patent '183 and the Pending Patent Applications.

24        74.    MR is informed and believes, and based thereon alleges, that LA did use the above

25   specified portion of the advance royalty payment to purchase the UBC Levitation Technology

26   Rights set forth above.

27        75.    However, LA never provided MR with Levitation Technology that worked; LA

28   failed to provide its full cooperation, assistance, consultation and advice to MR during MR's

BLMASTER REPLICA/ COMPLAINT                    13

1  development of products utilizing LA's Levitation Technology; LA failed to provide MR with

2  accurate and complete copies of all Know-How and Confidential Information; and LA failed to

3  cause LA's Consultants to provide MR with accurate and complete copies of all Know-How and

4  Confidential Information.

5      76.      By virtue of the conduct alleged above, Patent '183 and the Pending Patent

6  Applications, together with any revenues, profits or payments received by LA and/or the Sherlocks

7  in the future pursuant to their wrongful ownership of Patent '183 and the Pending Patent

8  Applications, should be held by the Court in constructive trust for the benefit of MR.

9

10      WHEREFORE, Master Replicas prays for judgment as follows:

11

12                              FIRST CAUSE OF ACTION

13      1.      For return of all consideration given by Master Replicas to LA;

14      2.      for rescission of the License Agreement;

15      3.      for attorney's fees and costs incurred in connection with this litigation;

16      4.      for costs of its suit; and

17      5.      for such other and further relief as the Court may deem just and proper.

18

19                              SECOND CAUSE OF ACTION

20      1.      for compensatory damages in an amount according to proof at the time of trial, but at

21  least in the amount of approximately $230,000, together with interest thereon at the maximum

22  allowable legal rate;

23      2.      for punitive damages in an amount related to each Defendant's net worth;

24      3.      for attorney's fees and costs incurred in connection with this litigation;

25      4.      for costs of its suit; and

26      5.      for such other and further relief as the Court may deem just and proper.

27

28

BI/MASTER REPLICA/ COMPLAINT                      14

1

<u>THIRD, FOURTH AND FIFTH CAUSES OF ACTION</u>

2    1.    for compensatory damages in an amount according to proof at the time of trial, but at

3    least in the amount of approximately $230,000, together with interest thereon at the maximum

4    allowable legal rate;

5    2.    for attorney's fees and costs incurred in connection with this litigation;

6    3.    for costs of its suit; and

7    4.    for such other and further relief as the Court may deem just and proper.

8

9

<u>SIXTH CAUSE OF ACTION</u>

10    1.    for compensatory damages in an amount according to proof at the time of trial, but at

11    least in the amount of approximately $230,000, together with interest thereon at the maximum

12    allowable legal rate;

13    2.    for a disgorgement of unjust profits;

14    3.    for costs of its suit; and

15    4.    for such other and further relief as this Court deems just and proper.

16

17

<u>SEVENTH CAUSE OF ACTION</u>

18    1.    for the institution by the Court of a constructive trust to hold Patent '183 and the

19    Pending Patent Applications, and any profits, revenues or other benefits derived therefrom, for the

20    benefit of MR;

21    2.    for attorney's fees and costs incurred in connection with this litigation;

22    3.    for costs of its suit; and

23    4.    for such other and further relief as this Court deems just and proper.

24

25

26

27

28

1   Dated: January 4, 2008          WYMAN & ISAACS LLP

2

3

4                                    By: _Carol Tenny_

5                                    Bruce Isaacs, Esq.
                                     Carol Tenney, Esq.
6                                    Attorneys for Plaintiff, MR

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BI/MASTER REPLICA/ COMPLAINT                16

**EXHIBIT A**

## TECHNOLOGY LICENSE AGREEMENT

THIS TECHNOLOGY LICENSE AGREEMENT (the "Agreement") dated as of the

__ day of June, 2006 (the "Effective Date"), is made by and between Master Replicas,

Inc., a California corporation, on behalf of itself and its Affiliates ("Master Replicas"),

and Levitation Arts, Inc., a corporation existing under the laws of the State of Kentucky

("Levitation Arts") (collectively "the Parties").

## BACKGROUND

Levitation Arts is engaged in the development of magnetic levitation technology

and has created certain intellectual property relating thereto.

Master Replicas is a company that sells high-end collectibles from popular film

franchises such as Star Wars, and has plans for other products for the toys, games,

and gift markets.

Master Replicas is interested in acquiring certain rights to the magnetic levitation

technology of Levitation Arts and Levitation Arts is interested in licensing such

technology to Master Replicas.

NOW, THEREFORE, in consideration of the foregoing background and the

covenants and obligations set forth in this Agreement, the Parties agree as follows:

## ARTICLE I

## DEFINITIONS

As used herein, the following terms will have the following meanings:

1.1     "Affiliate" means any entity that directly or indirectly owns, is owned by, or

is under common ownership with, a party to this Agreement where the words "own" and

"ownership" means direct or indirect possession of at least fifty percent (50%) of the

outstanding voting securities of a corporation or a comparable ownership in any other types of entities, provided however, that if the laws of the jurisdiction in which such entity operates does not allow fifty percent (50%) or greater ownership by a party to this Agreement, such ownership interest shall be the maximum percentage of the outstanding stock or voting right permitted by local law.

1.2 "Confidential Information" means any confidential and/or proprietary information, including designs, drawings, data, schematics, plans, software, or any other non-public information relating to magnetic levitation of Levitation Arts as of the Execution Date of this Agreement and marked or identified by Levitation Arts as "confidential" and further includes confidential and/or proprietary information relating to any continuing or future scientific, engineering, manufacturing or marketing development relating to magnetic levitation identified by Levitation Arts as Confidential Information, whether in oral, written, graphic or electronic form.

1.3 "Exclusive" means that Levitation Arts shall not make, have made, use, sell, offer to sell, or import or license others to make, have made, use, sell, offer to sell or import products in the Licensed Categories.

1.4 "Know-how" means all non-confidential techniques, practices, methods, knowledge, skill, experience, test data, costs, sales and manufacturing data of any sort or description relating to magnetic levitation and necessary or useful in practicing the Technology or in manufacturing Licensed Products.

1.5 "Licensed Categories" shall mean to use or practice the Technology to create products in the categories set forth in Exhibit A attached to this Agreement and identified as "Master Replicas Categories."

1.6    "Licensed Products" shall mean any product that when made, used or sold would infringe one or more valid claims of an issued, unexpired patent within the Patent Rights but for the license granted by this Agreement, or covered by any claim being prosecuted in a pending application directed to magnetic levitation. A claim of an issued, unexpired patent within the Patent Rights shall be presumed to be valid unless and until it has been held invalid by a final judgment of a court of competent jurisdiction from which no appeal can be or has been taken.

1.7    "Net Sales" shall mean the gross amount billed or invoiced on sales by Master Replicas of Licensed Products less: (a) trade, quantity, or cash discounts to the extent actually allowed and taken; (b) amounts repaid or credited by reason of rejection or returns; (c) any taxes, imposts, tariffs, custom duties or other governmental charges levied on the sale or delivery or use of a Licensed Product which are paid by or on behalf of Master Replicas; and (d) amounts billed or invoiced for shipping, handling, freight and warehousing costs.

1.8    "New Developments" shall have the meaning set forth in Section 6.3, below.

1.9    "Patent Rights" shall mean any and all patents owned, controlled, or possessed by Levitation Arts, and any patent applications filed by or assigned to Levitation Arts during the term of this Agreement relating to magnetic levitation, including without limitation those patents listed on Exhibit B attached hereto, any applications for reissue, reexamination, continuation, division, and continuations-in-part claiming priority therefrom, and any patents issuing on these applications, including reissue, extensions, and reexamination, any foreign counterparts of any of the

foregoing.

1.10 "Sublicensee" shall mean any person, corporation, partnership or business organization which is not an Affiliate of Master Replicas and to whom Master Replicas grants a sublicense under some or all of the Technology.

1.11 "Technology" means Know-how, Confidential Information, Patent Rights and New Developments.

1.12 "Term" shall mean a period of ten (10) years from the Effective Date.

1.13 "Territory" shall mean the entire world.

1.14 "Third-Party License" means a license giving Master Replicas the right to make, use and sell a character, replica or other intellectual property based on a name, character, story, storyline, plot, dialog, incident, artwork, symbol, design, depiction, likeness, format, pose, concept, theme, or graphic or photographic visual representation owned by a third party.

## ARTICLE II

### GRANT

2.1 Levitation Arts hereby grants to Master Replicas and its Affiliates, subject to all of the terms and conditions of this Agreement, the right and license to make, have made, use, sell, offer to sell and import Licensed Products in the Licensed Categories in the Territory for the Term of this Agreement, unless sooner terminated according to the terms of Article XIII. The foregoing license shall be exclusive for the initial six (6) years of the Term of this Agreement. At least three (3) months prior to the expiration of the initial six year Term of this Agreement, Levitation Arts and Master Replicas shall meet and negotiate in good faith the amount of minimum annual advance royalty

payments that Master Replicas would be required to remit to Levitation Arts in order to maintain the exclusivity of the license grant set forth in this Section 2.1. In the event that the parties cannot reach an agreement on such amounts by the expiration of the initial six year Term, the license grant set forth in this Section 2.1 shall become automatically become non-exclusive for the remainder of the Term.

2.2    Levitation Arts shall provide, and shall cause its third party vendors, manufacturers or agents to provide, Master Replicas with accurate and complete copies of all Know-How and Confidential Information.

2.3    Levitation Arts retains the right to make, use, sell and license products in product categories identified as "Levitation Arts Categories" in Exhibit A.

2.4    Master Replicas shall have the right to enter into sublicenses of the Technology licensed hereunder with any entity at commercially reasonable royalty rates. Master Replicas shall inform Levitation Arts of the identity of each Sublicensee. Master Replicas agrees that sublicenses granted by it shall (a) not be inconsistent with this Agreement; (b) include a provision for the cancellation of the sublicense when this Agreement expires or in the event that this Agreement is terminated in accordance with Article XIII; and (c) contain nondisclosure requirements with respect to Levitation Arts' Know-How and Confidential Information that are no less protective than the confidentiality provision in Article XI of this Agreement.

## ARTICLE III

## DUE DILIGENCE

3.1    Master Replicas agrees to use its commercially reasonable efforts to bring one or more Licensed Products to the marketplace through a program of product

development, production and distribution. Levitation Arts agrees to provide Master

Replicas with full cooperation, assistance, consultation and advice relating to the

product development and production of Licensed Products.

## ARTICLE IV

## PAYMENTS AND ROYALTIES

In consideration of the license and other rights granted hereunder to Master

Replicas by Levitation Arts, Master Replicas shall pay Levitation Arts as follows:

4.1     An advance royalty payment of One Hundred Eighty Thousand Dollars

($180,000) upon complete execution of this Agreement. Master Replicas agrees to

make such payment by: (a) a draft or wire in the amount of One Hundred Thousand

Seven Hundred and Fifty Dollars ($100,750) payable to the Adams Law Firm and

delivering such to counsel for Levitation Arts (if a draft) who shall hold such amount and

deliver it to the University of British Columbia only upon complete execution of the

transfer of all rights to the UBC Gravitron technology relating to magnetic levitation (the

"UBC Gravitron Technology") by the University of British Columbia to Levitation Arts;

and (b) a draft or wire transfer of Seventy-Nine Thousand Two Hundred Fifty Dollars

($79,250) payable directly to Levitation Arts. Notwithstanding anything to the contrary

contained herein, in the event that complete and valid transfer of all rights relating to the

UBC Gravitron Technology does not occur within thirty (30) days following the Effective

Date of this Agreement, as reflected in documentary evidence delivered to Master

Replicas prior to the expiration of such 30-day period, Master Replicas shall have the

option of terminating this Agreement immediately upon written notice to Levitation Arts,

without any penalty or liability, and Levitation Arts shall refund to Master Replicas within

seven (7) days of such termination the full amount of the $180,000 advance royalty payment made by Master Replicas.

4.2     Commencing on the third anniversary of the Effective Date of this Agreement, Master Replicas agrees to make a further advance royalty payment to Levitation Arts in the amount of Sixty Thousand Dollars ($60,000), and a like payment on the fourth and fifth anniversaries of the Effective Date of this Agreement. Levitation Arts shall invoice Master Replicas for such amount on the third, fourth and fifth anniversaries and Master Replicas shall pay such invoiced amounts within thirty (30) days of the date of receipt of such invoice.

4.3     Master Replicas shall pay earned royalties after crediting advance royalties for the applicable period ($180,000 during the first three-year period and $60,000 during the fourth, fifth and sixth years) during the Term of this Agreement to Levitation Arts as follows:

(a)     for Licensed Products that are made, used, or sold under a Third Party License, three percent (3%) of the amount of Net Sales in an annual period of up to Fifteen Million Dollars ($15,000,000), and four percent (4%) of the amount of Net Sales in such annual period that are above Fifteen Million Dollars ($15,000,000). For purposes of clarification of the foregoing, as an example of the royalty calculation hereunder, if during an annual period Master Replicas achieves Net Sales of Licensed Products sold under a Third Party License of $20,000,000, then the royalty payable to Levitation Arts would be calculated as follows:  0.03 x $15,000,000 + 0.04 x ($20,000,000 - $15,000,000) = $450,000 + $200,000 = $650,000;

(b)     for Licensed Products that are not made, used or sold under a

Third-Party License, a royalty of five percent (5%) of the amount of Net Sales in an annual period of up to Fifteen Million Dollars ($15,000,000) and six percent (6%) of the amount of Net Sales in such annual period that are above Fifteen Million Dollars ($15,000,000). For purposes of clarification of the foregoing, as an example of the royalty calculation hereunder, if during an annual period Master Replicas achieves Net Sales of Licensed Products not sold under a Third Party License of $20,000,000, then the royalty payable to Levitation Arts would be calculated as follows: 0.05 x $15,000,000 + 0.06 x ($20,000,000 - $15,000,000) = $750,000 + $300,000 = $1,050,000; and

(c)    twenty-five percent (25%) of all revenue, including royalties, advanced royalties and other license fees, received by Master Replicas from all Sublicensees on account of sublicenses of the Technology.

4.4    Payment of the royalties specified in Paragraph 4.3 shall be made by Master Replicas to Levitation Arts within thirty (30) days after the last day of March, June, September and December of each year during the term of this Agreement for Licensed Products sold by Master Replicas and sublicense revenue received by Master Replicas during the preceding calendar quarter. All payments are to be made in United States dollars at the principal offices of Levitation Arts as set forth in Section 14.1. Payment of royalties on Licensed Products sold by Master Replicas and on revenue received from Master Replicas' Sublicensees shall be accompanied by a royalty report which shall include a first section for royalties due on Licensed Products sold by Master Replicas in each of the two categories of Licensed Products (Third-Party Licensed Products and Other Products) and a second section reporting sublicensing revenue

Page 8

received during the preceding calendar quarter together with a copy of each sublicense royalty statement received from Sublicensees.

4.5     Only a single royalty shall be paid with respect to any Licensed Product regardless of the number of claims of patents within the Patent Rights utilized.

## ARTICLE V

## BOOKS AND RECORDS

5.1     Master Replicas shall keep true books of accounting containing an accurate record of all data necessary for the determination of the amounts payable under Article IV, including without limitation copies of all agreements executed with Sublicensees.  Such records shall be kept for at least a three-year period preceding the latest quarterly report at Master Replicas' principal place of business and shall be available for inspection upon no less than twenty (20) business days prior notice during regular business hours one time per year by a certified public accountant selected and paid for by Levitation Arts and reasonably acceptable to Master Replicas in order for Levitation Arts to verify the correctness of any report and/or payment made under this Agreement.  The provision of this Paragraph 5.1 shall survive termination of this Agreement for a period of three (3) years.  Master Replicas agrees that a comparable books and records obligation shall be included in each and every sublicense granted by Master Replicas giving Levitation Arts the right to inspect the books and records of the Sublicensee.

5.2     The certified public accountant conducting the investigation of the reports and records of Master Replicas shall disclose to Levitation Arts only information relating to the accuracy of the records kept and the payments made by Master Replicas and

shall be under a duty to keep confidential any other information obtained from such books and records by executing Master Replicas' standard form of nondisclosure agreement.

5.3    Any adjustment in the amount of royalties to Levitation Arts on account of overpayment or underpayment of royalties shall be made at the next date when royalty payments are to be made to Levitation Arts under this Article V. If the verification on behalf of Levitation Arts results in an upward adjustment of greater than ten percent (10%) of royalties due under Article IV to Levitation Arts for the period of time in question, Master Replicas shall pay interest of eight percent (8%) per annum on such underpaid amount and the reasonable out-of-pocket expenses of Levitation Arts relating to the inspection within thirty (30) days of the date of the report from Levitation Arts' certified public accountant.

### ARTICLE VI

### PATENT APPLICATION FILING AND PROSECUTION AND PATENT MAINTENANCE

6.1    Levitation Arts shall continue prosecution of each of the pending applications within the Patent Rights in the United States and in the foreign countries identified in Exhibit B. Additionally, Levitation Arts agrees to file at least one patent application relating to the feedback circuit disclosed and discussed with Master Replicas and currently in final development. As to all patent applications pending (as identified in Exhibit B) on the Effective Date of this Agreement and all patent applications later filed by Levitation Arts, Levitation Arts shall have the right and duty to prosecute such applications at its own expense. In the event that Levitation Arts concludes, using reasonable business judgment, that an application pending on the

Effective Date of this Agreement or later filed by Levitation Arts, is not commercially justified, Levitation Arts shall provide Master Replicas with notice of its intent to abandon further prosecution of the application at least thirty (30) days prior to the date on which such abandonment becomes irrevocable and within fifteen (15) days of receipt of such notice, Master Replicas shall give notice to Levitation Arts that it elects, or does not elect, to assume the expense of continued prosecution of such application. If Master Replicas elects to assume the expense of continued prosecution, Levitation Arts shall thereafter take action to continue prosecution of such application until Master Replicas gives notice to Levitation Arts to abandon such application. Levitation Arts shall bill Master Replicas for attorney fees, fees paid to national patent offices and foreign associates fees for any such prosecution action taken at the expense of Master Replicas and Master Replicas shall make payment within thirty (30) days of receipt of such statement. Master Replicas at any time after electing to assume payment for continued prosecution of such application may choose its own counsel to continue such prosecution and Levitation Arts will cooperate with Master Replicas' appointed counsel. If Master Replicas elects not to assume the expense of continued prosecution, Levitation Arts may, in its sole discretion, abandon such application.

6.2    With respect to each patent that has been granted at the time of execution of this Agreement, or has been granted on any application identified in Exhibit B or is granted based on an application later filed by Levitation Arts, Levitation Arts agrees to pay maintenance, renewal or annuity fees to maintain the patent in full force and effect. In the event that Levitation Arts concludes, using reasonable business judgment, that the continued maintenance of any patent is not commercially justified,

Levitation Arts shall give notice to Master Replicas of its intent to abandon the patent no later than thirty (30) days before the date on which the fee is due. Master Replicas within fifteen (15) days from the date of the notice from Levitation Arts shall give notice to Levitation Arts that it elects, or does not elect, to continue maintenance of the patent and its agreement to pay the maintenance fee. In such event, Levitation Arts shall pay the maintenance fee and shall bill Master Replicas who shall make payment for such fee by Levitation Arts within thirty (30) days of the date of such statement. If Master Replicas does not elect to continue maintenance of the patent, Levitation Arts may, in its sole discretion, allow the patent to be abandoned.

6.3     In the event that the Parties engage in joint development pursuant to Article IX, Levitation Arts shall have the exclusive ownership with respect to all inventions, patent applications or patents based on any product or method developed during the joint development project except for products and methods conceived solely by Master Replicas (the "New Developments").

6.4     The Parties agree to cooperate in all respects and to the fullest extent possible toward successful prosecution of any patent application within the Patent Rights or any later filed patent application.

## ARTICLE VII

## PATENT MARKING AND INFRINGEMENT

7.1     Master Replicas agrees to mark all Licensed Products during the term of this Agreement with a proper patent notice including U.S. Patent No. 5,168,183 and such additional patents as Levitation Arts will advise from time to time.

7.2     If at any time during the Term of this Agreement, either party becomes

Page 12

aware through reasonable evidence of an infringement of a patent included in the Patent Rights which occurs within the Licensed Categories, then such party shall notify the other party and Levitation Arts shall have the right, but not the obligation, to enforce any of such patents. If Levitation Arts does not inform Master Replicas of its intent to enforce such patents within thirty (30) days of receiving notice of such infringement or if Levitation Arts within a three (3) month period after such notice fails to terminate the infringement or to bring suit or action to compel termination, Master Replicas shall have the right, but not the obligation, to bring such suit or action to compel termination and shall have the right in that event to join Levitation Arts as a party plaintiff at Master Replicas' expense.

7.3    No settlement, consent judgment or other voluntary final disposition of a suit or action brought pursuant to Paragraph 7.2 above may be entered into without the consent of both Master Replicas and Levitation Arts, which consent shall not be unreasonably withheld. Any damages recovered by such suit or action shall be first used to reimburse the party who incurred the costs of effecting such termination (including attorneys fees), actually paid by such party, and thereafter the party instituting the suit or action shall be entitled to seventy-five percent (75%) of the damages collected and the remainder shall be paid to the other party. In the event that the parties consent to the settlement or other voluntary disposition of a suit, the parties shall at that time allocate any settlement amount paid by the third-party infringer as they may negotiate based on the particular circumstances involving the infringement and the impact of such infringement on sales of Licensed Products by Master Replicas.

7.4    In the event that a declaratory judgment action alleging invalidity, non-

infringement or unenforceability of any patent within the Patent Rights shall be brought against Master Replicas or Levitation Arts, Levitation Arts shall have the right, but not the obligation, to conduct the defense of such Patent Rights. In the event that Levitation Arts does not intend to defend such action, it shall, within ten (10) days from service of the declaratory judgment complaint (or similar action in foreign jurisdictions), notify Master Replicas of its intent and Master Replicas shall have the right to take over the defense of the action at its own expense.

7.5    In any suit that either party may be involved in relating to the Patent Rights, the other party hereto shall cooperate fully, and upon payment of the expense by the requesting party, in all respects and to the extent possible make available to the party involved in the suit, at reasonable times and under appropriate conditions all relevant personnel, records, papers, information, samples, specimens, and the like in its possession.

## ARTICLE VIII

## TRADEMARK LICENSE

8.1    Levitation Arts has applied for registration of the trademark "LEVITATION ARTS", Serial No. 78/891,568, and is the owner of the entire right, title and interest in and to such trademark. Levitation Arts hereby grants to Master Replicas the non-exclusive right to use the trademark LEVITATION ARTS during the term of this Agreement on all products manufactured and sold using the Technology. Master Replicas agrees and acknowledges that Levitation Arts retains all right, title and interest in and to the mark LEVITATION ARTS. Master Replicas agrees to maintain the quality of Licensed Products at a level that meets industry standards and is commensurate

Page 14

with the quality of Licensed Products as established by Levitation Arts from time to time. Master Replicas agrees to use the mark LEVITATION ARTS on all Licensed Products.

## ARTICLE IX

## JOINT DEVELOPMENT

9.1    The parties agree to jointly engage in further development of the Technology specific to the requirements of Master Replicas to complete looks-like works-like model(s) for retailer review and in order to achieve a December 2007 launch of a Licensed Product. Master Replicas agrees that it will make available upon the Effective Date of this Agreement the sum of Fifty Thousand Dollars ($50,000) to support such joint development program. Master Replicas shall have complete control of the expenditure of the $50,000 fund. The parties shall meet and plan a suitable program, budget allocation and schedule for such joint development and agree that at least a portion of the development funds shall be dedicated to improvements and refinements of the feedback circuit, filing of a provisional patent for the circuit and a utility patent based on such provisional patent. Levitation Arts shall submit statements for out-of-pocket expenses, such as travel expenses, actual costs incurred for technical consultants, prototypes, etc. and such statements shall be paid by Master Replicas within seven (7) days of receipt. Levitation Arts shall not charge for any Levitation Arts' services performed on the joint development project; Levitation Arts acknowledges that the receipt of royalties pursuant to Article IV constitutes its sole remuneration for the services performed.

## ARTICLE X

### REPRESENTATIONS, WARRANTIES AND COVENANTS

10.1   Levitation Arts represents, warrants and covenants: (a) that it is the sole and exclusive owner of all right, title and interest in and to the Technology; (b) that the Technology is free and clear of any lien, encumbrance, security interest or restriction on license; (c) that Levitation Arts has not previously granted and will not grant during the term of this Agreement any right, license or interest in, to or under the Technology or any portion thereof which is inconsistent with the rights and licenses granted to Master Replicas herein; (d) that to the best of Levitation Arts' knowledge, the Technology does not infringe on any intellectual property of any third party; (e) that there are no actions, suits, investigations, claims or proceedings pending or threatened in any way relating to the Technology; (f) that during the term of this Agreement it will not conduct any work relating to the Licensed Categories other than for Master Replicas; (g) that Levitation Arts is a corporation, duly organized, validly existing, and in good standing under the laws of the State of Kentucky; and (h) that the execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate action on the part of Levitation Arts.

10.2   Master Replicas represents, warrants and covenants: (a) that it is a corporation duly organized, validly existing and in good standing under the laws of the State of California; (b) that the execution, delivery and performance of this Agreement have been duly authorized by all necessary corporate action on the part of Master Replicas; and (c) that it has not previously entered into any agreement which is inconsistent with the obligations undertaken in this Agreement.

Page 16

10.3    It is understood that if the representations and warranties made by a party under this Article X are not true and accurate, or if the covenants made by a party under this Article X are not upheld and complied with, and the other party incurs damages, liabilities, costs or other expenses as a result of such falsity or non-compliance, the party making the representation, warranty and/or covenant shall indemnify and hold the other party harmless from and against any such damages, liabilities, costs or other expenses incurred as a result of such falsity or such non-compliance.

## ARTICLE XI

## CONFIDENTIAL INFORMATION

11.1    The Parties acknowledge that Master Replicas and UFO (a predecessor of Levitation Arts) entered into Proprietary Information Exchange and Mutual Confidentiality Agreements on April 19 and 26, 2006 and that the terms and conditions of this Article XI upon execution of this Agreement shall supercede and replace such earlier agreement for the period after execution of this Agreement.

11.2    The Parties agree that all information contained in documents marked "Confidential" which are received by one party from the other party, and all information provided by Levitation Arts to Master Replicas that is Confidential Information, shall be received in strict confidence, used only for the express purposes set forth in this Agreement, and not disclosed by the recipient party (except as required by law or court order) to any person other than the employees and consultants bound by a confidentiality agreement, without the prior written consent of the other party. Confidential Information shall not include information that (a) was in the public domain

at the time of disclosure, (b) later became part of the public domain through no act or omission of the recipient party, its employees, agents or permitted successors and assigns, (c) was lawfully disclosed to the recipient party by a third party having no obligation to the disclosing party, (d) was already known by the recipient party at the time of disclosure as established by in documents pre-dating the date of disclosure, and (e) was independently developed by the recipient without use of or access to such Confidential Information.

11.3    Each party's obligation of confidentiality, limited use and non-disclosure set forth in Paragraph 11.2 shall be fulfilled by using at least the same degree of care with the other party's Confidential Information as it uses to protect its own confidential information.

11.4    This obligation shall continue in full force and effect during the term of this Agreement and thereafter for a period of two (2) years.

## ARTICLE XII

## COMMERCIAL COOPERATION

12.1    Master Replicas acknowledges that Levitation Arts intends to manufacture and sell products in the Levitation Arts Categories identified in Exhibit A. In procuring components for Master Replicas' Licensed Products, Master Replicas agrees that Levitation Arts may, upon timely notice and arrangement, order components from the same supplier as Master Replicas and allow Levitation Arts to place such "piggy-back" order for the account of Levitation Arts to enable Levitation Arts to obtain the advantages of quantity pricing for such components. Notwithstanding the foregoing, Master Replicas shall have the right, at any time, to rescind such approval and may

request that its suppliers not fulfill any orders so placed by Levitation Arts where Master Replicas believes in its sole discretion that the procurement of components by Levitation Arts from Master Replicas' suppliers would impinge upon or interfere with Master Replicas' rights or benefits under such supply agreements or otherwise adversely affect Master Replicas business.

12.2    Upon Levitation Arts' request, Master Replicas agrees to sell Licensed Products to Levitation Arts for retail sales by Levitation Arts at prices, terms and conditions as received by the most favored customer of Master Replicas selling through retail channels.

## ARTICLE XIII

## TERM AND TERMINATION

13.1    This Agreement shall commence on the Effective Date and continue in full force and effect for the Term, unless sooner terminated in accordance with this Article XIII.

13.2    Either party may, without penalty, terminate this Agreement effective upon written notice to the other party in the event of: (a) a material breach of this Agreement by the other party and failure to cure such breach within thirty (30) days following written notice of breach by the non-breaching party, which notice shall specify the nature and details of the breach; and (b) a petition for relief under any bankruptcy statute is filed by or against the other party, or the other party makes an assignment for the benefit of creditors, or a receiver is appointed for all or a substantial part of the party's assets, and such petition, assignment, or appointment is not dismissed or vacated within sixty (60) days.

## ARTICLE XIV

## MISCELLANEOUS

14.1  All notices, authorizations, and requests sent to either party in connection

with this Agreement shall be deemed given on the day they are either (a) deposited in

the U.S. mail, postage prepaid, certified or registered, return receipt requested or (b)

sent by air express courier with charges prepaid, and addressed as follows (or to such

other address as the party to receive the notice or request so designates by written

notice to the other party):

Notices to Master Replicas:

Master Replicas, Inc.
Attention: Michael Cookson, Chief Executive Officer
201 North Civic Drive, Number 239
Walnut Creek, CA 94596
Telephone: (925) 979-1500 x121
Fax: (925) 930-9198

Notices to Levitation Arts:

Levitation Arts, Inc.
Attention: Mike and Karen Sherlock
3003 Aubert Avenue
Louisville, KY 40206
Telephone: (502) 893-9606
Fax: (502) 805-0592

or to such other address as the party to receive the notice or request so designates by

written notice to the other.

14.2  Master Replicas may not assign this Agreement to any person or entity

without the consent of Levitation Arts, except that Master Replicas may assign this

Agreement, without the consent of Levitation Arts, to any successor through merger or

consolidation or any acquirer of all or substantially all of its assets of Master Replicas or

Page 20

any acquirer of 50% or more of the voting power of Master Replicas. This Agreement shall inure to and bind all successors, assigns, receivers and trustees of the respective parties.

14.3 Nothing herein shall be deemed to create an agency, joint venture, or partnership relation between the parties hereto.

14.4 IN NO EVENT WILL EITHER PARTY BE LIABLE FOR ANY INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES ARISING OUT OF THIS AGREEMENT, ON ANY LEGAL THEORY, REGARDLESS OF WHETHER THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

14.5 The parties acknowledge and agree that this Agreement is and shall be subject to Section 365(n) of the United States Bankruptcy Code and that both Parties shall be entitled to all rights and benefits thereunder in accordance with the terms and conditions of this Agreement.

14.6 This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the State of California, without giving effect to principles of conflicts of law. Each of the parties to this Agreement consents to the exclusive jurisdiction and venue of the courts of the state and federal courts of San Francisco, California.

14.7 In any action to enforce any right or remedy under this Agreement, or to interpret any provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees, costs and other expenses.

14.8 If a court of competent jurisdiction finds any provision of this Agreement or

Page 21

portion thereof, to be unenforceable, then this Agreement shall immediately be deemed amended or modified to exclude such clause or provision and the remainder of this Agreement shall continue in full force and effect. No failure by either party to exercise a right under this Agreement or under law shall operate as a waiver thereof. No waiver of any breach of this Agreement shall constitute a waiver of any other breach. No waiver shall be effective unless in writing and signed by the waiving party.

14.9    This Agreement contains the entire agreement between the parties concerning its subject matter, and supersedes all oral understandings, representations, prior discussions and preliminary agreements of any nature. Any representations, warranties, promise or conditions not expressly contained in this Agreement shall not be binding upon the parties. This Agreement may be executed in counterparts, each of which when so executed shall be deemed to be an original, and all of which taken together shall constitute one and the same Agreement. Except as may be specifically allowed hereunder, this Agreement may not be modified or amended except by a written amendment to this Agreement dated after the Effective Date and signed by authorized representatives of both parties.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties have executed this Technology License

Agreement as of the Effective Date first above written.

MASTER REPLICAS, INC.

By: _____

Michael Cookson
Chief Executive Officer

LEVITATION ARTS, INC.

By: _____

Name: **Michael Sherlock**

Title: _____

By: _____

Name: **Karen Sherlock**

Title: _____

IN WITNESS WHEREOF, the Parties have executed this Technology License

Agreement as of the Effective Date first above written.

MASTER REPLICAS, INC.

By:_____
      Michael Cookson
      Chief Executive Officer

LEVITATION ARTS, INC.

By:_____

Name: Michael Sherlock_____

Title:_____

By:_____

Name: Karen Sherlock_____

Title:_____

Exhibit A

TO THE

MASTER REPLICAS, INC. AND LEVITATION ARTS, INC.

TECHNOLOGY LICENSE AGREEMENT

DATED

JUNE _, 2006

| MASTER REPLICAS LICENSED CATEGORIES* | | | |
|---|---|---|---|
| **TOYS** | **GAMES/PUZZLES** | **COLLECTIBLES** | **GENERAL GIFTS** |
| • Action Figures<br>• Activity Sets<br>• Building Sets<br>• Dolls<br>• Hobby Sets and Supplies<br>• Learning and Exploration<br>• Licensed Products<br>• Models/Construction Sets<br>• Playsets<br>• Plush<br>• Radio Controlled Toys<br>• Robotic/Virtual Pets<br>• Scientific Toys<br>• Targets<br>• Vehicles | • Children's Action<br>• Electronic Handheld/<br>  Tabletop<br>• Family Action<br>• Hybrid<br>• Licensed Products<br>• Moving<br>• Orbit<br>• Skill<br>• Strategy<br>• 3-D Puzzles | • Air Globes<br>• Basic Units<br>• Holiday Items<br>• Licensed Products<br>• Moving Units<br>• Orbit Units<br>• Ornaments<br>• Sports Memorabilia<br>• Souvenirs<br>• Tabletop Decorations | • Air Globes<br>• Basic Units<br>• Executive Toys<br>• Floating Greetings<br>• Holiday Items<br>• Licensed Products<br>• Moving Units<br>• Orbit Units<br>• Ornaments<br>• Tabletop Decorations<br>• Souvenirs<br>• Sports Memorabilia<br>• Museum Gift Items |

| LEVITATION ARTS CATEGORIES |
|---|
| **ALL CATEGORIES OTHER THAN THE MASTER REPLICAS CATEGORIES\*** |
| • Amusement Park / Dark Rides<br>• Arcade Machines**<br>• Floor/Ground Fountains***<br>• Lamps and Night Lights***<br>• Magic Tricks and Stage Illusions****<br>• Industrial and Aerospace<br>• Museum and Educational Exhibits (not including any Museum Gift Items)<br>• Point Of Purchase and Commercial Displays |

\*  Products listed under each Master Replicas Licensed Category and the Levitation Arts Categories are illustrative rather than restrictive.  Additional Products may fall within these Categories.

\*\*  Large, floor-standing electronic/mechanical games, operated by coin, token, or electronic credit to activate a play sequence of set duration.

\*\*\*  To the extent that a Floor or Ground Fountain Product or a Lamp or Night Light Product falls within one of the Master Replicas Licensed Categories, Levitation Arts and Master Replicas shall each have the right to make, have made, use, sell, offer to sell and import such Product under the terms of this Agreement.

\*\*\*\*  Products specifically designed for use in presentation situations, framed by a theatrical routine or 'patter'; and characterized by the product base being either concealed (such as under a stage, counter, or table) or disguised as a common object (such as a book, card deck, or close-up presentation); and having a floater object that is either a common magical prop (such as a magic wand or ball) or an everyday object (such as a playing card, coin, or cookie), and not a model figure, vehicle, or third-party licensed property.

EXHIBIT B

TO THE

MASTER REPLICAS, INC. AND LEVITATION ARTS, INC.

TECHNOLOGY LICENSE AGREEMENT

DATED

JUNE _, 2006

| LEVITATION ARTS PATENT RIGHTS | | |
|---|---|---|
| Country/Region | Appl. Serial No. | Filing Date |
| US Provisional | Electronic Feedback Circuit for Magnetic Levitation | To be filed on or before September 1, 2006 |
| PCT Application | PCT/CA2003/001501 | 10/29/2003 |
| PCT Application publication | WO 2004/030198 A2 | -- |
| US Provisional | 60/413,881 | 10/27/2002 |
| US Utility | 10/529,507 | 03/23/2005 |
| Canada | 2510566 | 09/29/2003 |
| European | 03753183.7 or 2003000753183 | 09/29/2003 |
| Japan | 538624/2004 | 09/29/2003 |
| Australia | 2003000271474 | 09/29/2003 |
| China | 03142900.0 | 09/29/2003 |
| South Korea | 2005-7005314 | 03/26/2005 |
| South Africa | 2005/03370 | 09/29/2003 |

1  Bruce Isaacs, Esq. SBN 100926
   Carol Tenney, Esq. SBN 193813
2  WYMAN & ISAACS LLP
   8840 Wilshire Blvd., Second Floor
3  Beverly Hills, CA 90211
   Tele: (310) 358-3221
4  Fax: (310) 358-3224

5  Attorneys for Plaintiff,
   MASTER REPLICAS, INC., a California corporation,
6  now known as Corgi International Ltd.

7

ENDORSED
F I L E D
San Francisco County Superior Court

JAN 0 8 2008

GORDON PARK-LI, Clerk
BY: ROSSALY E. DE LA VEGA NAVARRO
Deputy Clerk

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF SAN FRANCISCO

10

11  MASTER REPLICAS, INC., a California     )    Case No.: CGC-08-470739
    corporation, now known as Corgi         )
12  International Ltd.,                      )
                                            )
13                                          )
                      Plaintiff,            )    NOTICE OF ERRATA RE EXHIBITS
14                                          )    INADVERTENTLY OMITTED FROM
          vs.                               )    COMPLAINT
15                                          )
                                            )
16  LEVITATION ARTS, INC., a Kentucky       )
    corporation; KAREN A. SHERLOCK, an      )
17  individual; MICHAEL F. SHERLOCK, an     )
    individual; and Does 1-100, Inclusive,  )
18                                          )
                                            )
19                    Defendants.           )
                                            )
20  _____)

21

22

23

24

25

26

27

28

BJMASTER REPLICAS/NOTICE OF ERRATA

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that Ex. "B" and Ex. "C" to Plaintiff MASTER REPLICAS,

3  INC.'s (now known as CORGI INTERNATIONAL LTD.) ("MR's") Complaint were inadvertently

4  omitted from MR's Complaint when it was filed on January 4, 2008. Attached hereto are true and

5  correct copies of Ex. "B" and Ex. "C". There are no other exhibits to MR's Complaint other than

6  Ex. "A", which was attached to the filed Complaint, and Exhibits "B" and "C", attached hereto.

7

8  Dated: January 8, 2008           WYMAN & ISAACS LLP

9

10

11            By: _Carol Tenney_

12                Bruce Isaacs, Esq.
              Carol Tenney, Esq.

13                Attorneys for Plaintiff
              MASTER REPLICAS, INC., a California corporation,

14                now known as Corgi International Ltd.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF ERRATA RE EXHIBITS INADVERTENTLY
OMITTED FROM COMPLAINT

**EXHIBIT B**

 
To: Bryan Ono <Bryan@toyteq.com>
From: Mike & Karen Sherlock <ufo@zianet.com>
Subject: Gravitron Summary 11/24/06
Cc: Michael Cookson <michaelcookson ...snip... Cookson <cooksonsf@aol.com>

Friday 11/24/06 Confidential

Bryan,

Re. your below-pasted email of 11/22/06.

Sorry Bryan, but in our opinion it is you who "do not get it".

We disagree with your interpretation of the requirements of Levitation Arts' license agreement with Master Replicas - and so does our attorney.

We have also already fully responded to every point in your below emails - even though you continue to act as though we have not. LA has also already provided MR with all the pertinent Gravitron info that LA - or any of our contractors - has. LA does not have Gravitron head "engineering drawings" - nor do any of our contractors. The two prototype heads we have given you - along with the documents, diagrams, measurements, photos and videos we have also provided - are the closest we have to what you are asking for.

These two heads were built over five years ago by a now-retired engineer and - although the heads work great - we were just recently able to begin testing his assumptions regarding coil windings, coil placement, sensor position, and magnet-spacing. Once this "head optimization" R&D - which will yield the info you request about "tolerances" - is complete, we will share the findings with MR. But as of this morning, our senior engineer informs us: "I understand you are concerned about making an optimized prototype but I don't feel like we can do that yet".

Nevertheless, you are simply dead wrong in your key assertion that an engineering drawing is required to understand the technology and duplicate the head. The proof of this is that two different Chinese manufacturers have already successfully constructed working Gravitron heads without one - see the PDF attached to this email - using only our reference prototype and simple guidelines we provided.

In lieu of an engineering drawing, LA provided MR with the second reference prototype - above and beyond what our license requires, and at our own initiative and expense. While the prototype was in your care, it was broken. If - as you say - you truly "need to understand" the technology, then you would send us back the second prototype so that we can get it working again. Then you can study it to your heart's content, and also use it for a definitive reference for troubleshooting the 628 unit and any others.

As we have told MR before, we also do have boxes of obsolete, incomplete, partially inaccurate, and obscurely-referenced documentation which is not pertinent, and will only serve to muddy the waters. Nevertheless we have already offered - in writing, months ago - to make copies of this huge mass of material for MR, if and when MR requests it.

But - and we're saying this again, and for the last time - LA's license agreement does not require LA to pay our contractors to do work to create Know-How which LA does not already possess - even if MR wants it. In fact, if we decide to stop working on the Gravitron tomorrow




and create no other Know-How whatsoever, then we owe MR nothing more. Also, LA is not required to take our contractors off of our work, and send them over to work with you or anybody else - we are only required to provide MR with accurate and complete "copies of all Know-How and Confidential Information". We have done so. And the record confirms that it is Master Replicas who has consistently disregarded our advice and refused our assistance - your current refusal to let us examine the prototype which we made you for free is but the latest example. And as for being non-cooperative, we are still waiting for our long-overdue prototype repair check, and the photo we requested of the Pre-Toy Fair Gravitron presentation.

Finally, Levitation Arts will continue to provide our best advice to Master Replicas on all matters concerning the Gravitron - including our expert opinion about your recent counterproductive decisions, and ongoing misstatements of fact. (For instance, at no time did we ever call you "stupid"). However our license does not require us to continue responding to any more of your vitriolic and harassing emails. As our friend Michael Cookson says, "life is too short".

Mike & Karen Sherlock
Levitation Arts

At 11:11 PM 11/22/2006, you wrote:
> You guys really do not get it. . . .
>
> I need to be able to understand and troubleshoot
>
> Once again I am going to make it VERY CLEAR. I WANT AN ENGINEERING DRAWING
> THAT SPECIFIES THE LOCATION AND TOLERANCE OF ALL COMPONENTS FOR
> GRAVITRON.. WE CANNOT PRODUCE THIS ITEM WITHOUT THE SPECIFICATIONS
> AND ENGINEERING DRAWINGS. I DO NOT WANT TO SEND IT TO YOU TO FIX AND
> NOT LET ME UNDERSTAND WHAT IS WRONG AND HOW TO TROUBLESHOOT.
>
> Calling me stupid may be satisfying to you, but let me assure you it does not bother me
> because I know what I am doing and I have the track record to prove it.
>
> So once again, I will re-iterate, as Michael has said, if you do not want to cooperate 100% we
> will just call it a day and you give us our money back and we will go our separate ways. I do
> not have the time or patience to manage a project in this way.
>
> You MUST let me know when I can expect to receive all the information that I have
> requested.
>
> 1. COMPLETE engineering specs and drawings wihich include, but is not limited to
> tolerances, brand names, known problems, troubleshooting. If you supply all of the correct
> information, we will be able to replicate and understand your model.
> 2. We have reviewed our agreement with Levitation Arts, you must allow access to ALL
> resources, this includes the vendors, prototype makers and programmers and anyone else
> who has contributed to this technology.
> 3. We must have your complete cooperation to complete the development of this technology,


since it is obviously  far from production ready since you cannot provide me precise specs and drawings to replicate the model.

One last thing, please do not patronize me by saying "affection" It is insulting.

Bryan

**EXHIBIT C**

**Levitation Arts**
**3003 Aubert Ave.**
**Louisville, KY 40206**
**Phone 502 893-9606   Fax 502 805-0592**

Wednesday 12/13/06                                                                    Confidential

Dear Bryan,

Thanks for your letter dated 12/11/06, that was attached to your email dated 12/12/06, and which we received just today. Since you have not communicated with us in three weeks, we were unaware of your progress or lack thereof regarding Master Replicas' efforts to "demonstrate manufacturing feasibility" of our Gravitron technology. It is disheartening to us to learn that MR has not only missed the planned Spring ship dates, but also now considers the December 2007 ship date in jeopardy. From our perspective, the responsibility for this rests exclusively with MR, and - as of late - is nobody's fault but your own.

Levitation Arts has consistently provided Master Replicas with full and complete support beyond the requirements of our contract. Unfortunately, you – on behalf of Master Replicas – have insisted on ignoring our advice, disregarding our technical briefings, and refusing our repeated offers of assistance. Also, contrary to your letter's assertion, Levitation Arts has not denied you or anyone else "direct access" to our contract consultants. We have simply requested that we be kept in the loop – meaning that we wish to be the conduit for all correspondence, included in any phone conferences, and present at any meetings. We have also required that Levitation Arts be compensated for any expenses that are incurred as a result of any new work which you now want done on Master Replicas' behalf to - as you say - "problem-solve".

You are incorrect in your claim that some of the "Know How" stipulated in our contract "exists in the minds/experience" of our consultants. The Know How which you refer to is embodied exclusively in the extensive and complete technical documentation and two reference prototypes which we have given MR – along with any new information derived from our ongoing R&D work. We are currently compiling and writing a report on the latter, which we expect to deliver to Master Replicas before the end of the year.

In our 11/10/06 phone conference with you and Michael Cookson, Michael requested that we come out to Los Angeles, get together with our Levitation Arts consultants, and confer with you and 628 Design. During this phone conference – although we offered several less cumbersome alternatives - we stated our willingness to do this, even though our contract does not require it. However, we were subsequently told not to make travel plans until further notice from MR.

Also, as we have said repeatedly, we are willing and eager to inspect and repair the second reference prototype which LA constructed for MR at LA's own expense and volition, and which broke while in your care. We are also willing to inspect and repair any other prototypes which MR has constructed and which do not work as expected, and to provide MR with a full report of any problems found and the specific steps taken to analyze and correct them. Frankly Bryan, sending us both the broken second reference prototype and the non-working unit which you say was built by 628 Design is the fastest and most economical route to MR demonstrating the manufacturing feasibility which you desire. We will offer now to do this at no charge – although, once again, none of this is in any way required by our license agreement with MR.

Cheers,
Mike & Karen Sherlock     *Mike Sherlock*     *Karen Sherlock*
Levitation Arts. Inc.

cc: Paul Adams. The Adams Law Firm          Fed Ex'd to Bryan Ono 12/14/06
                                             TRK# 7911 8913 8979

CASE NUMBER: CGC-08-470739 MASTER REPLICAS, INC., A CALIFORNIA CORPORATION

## NOTICE TO PLAINTIFF

A Case Management Conference is set for

**DATE:** **JUN-06-2008**

**TIME:** **9:00AM**

**PLACE:** **Department 212**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.

However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 212 twenty-five (25) days before the case management

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A MANDATORY SETTLEMENT CONFERENCE OR TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

See Local Rules 3.6, 6.0 C and 10 D re stipulation to commissioners acting as temporary judges



# Superior Court of California
## County of San Francisco

**HON. DAVID BALLATI**
**PRESIDING JUDGE**

### Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR PROGRAM ADMINISTRATOR**

The Judicial Mediation program offers mediation of complex civil litigation by a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable David J. Ballati
The Honorable Anne Bouliane
The Honorable Ellen Chaitin
The Honorable Robert L. Dondero
The Honorable Ernest H. Goldsmith
The Honorable Harold E. Kahn
The Honorable Patrick J. Mahoney
The Honorable Tomar Mason

The Honorable James J. McBride
The Honorable Kevin M. McCarthy
The Honorable John E. Munter
The Honorable Ronald Quidachay
The Honorable A. James Robertson, II
The Honorable John K. Stewart
The Honorable Mary E. Wiss

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Program Administrator will facilitate assignment of cases that qualify for the program.

Note: Space is limited. Submission of a stipulation to judicial mediation does not guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

10/07 (ja)

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA 94102-4514

|  |  |
|---|---|
| **Plaintiff** | Case No. _____ |
| v. | **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION** |
| **Defendant** |  |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ **Private Mediation**      ☐ **Mediation Services of BASF**   ☐ **Judicial Mediation**
☐ **Binding arbitration**                                    Judge _____
☐ **Non-binding judicial arbitration**                       Judge _____
☐ **BASF Early Settlement Program**
☐ **Other ADR process (describe)** _____

**Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |  | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |  | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |  | Dated: _____ |

☐ *Additional signature(s) attached*

**CM-110**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:          FAX NO. *(Optional)*: | |
| E-MAIL ADDRESS *(Optional)*: | |
| ATTORNEY FOR *(Name)*: | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF |
|---|
| STREET ADDRESS: |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: |
| BRANCH NAME: |

| PLAINTIFF/PETITIONER: |
|---|
| DEFENDANT/RESPONDENT: |

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one):  ☐ **UNLIMITED CASE**       ☐ **LIMITED CASE**<br>(Amount demanded        (Amount demanded is $25,000<br>exceeds $25,000)          or less) | |

| A CASE MANAGEMENT CONFERENCE is scheduled as follows: |
|---|
| Date:                    Time:              Dept.:          Div.:            Room: |
| Address of court *(if different from the address above)*: |

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.   The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a.   Type of case in  ☐ complaint   ☐ cross-complaint   *(describe, including causes of action)*:

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. January 1, 2007] | **CASE MANAGEMENT STATEMENT** | Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request ☐ a jury trial ☐ a nonjury trial  *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*
   c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a. ☐ days *(specify number):*
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a. **Attorney:**
   b. **Firm:**
   c. **Address:**
   d. **Telephone number:**
   e. **Fax number:**
   f. **E-mail address:**
   g. **Party represented:**
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a. Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c. ☐ The case has gone to an ADR process *(indicate status):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**10.  d.**  The party or parties are willing to participate in *(check all that apply):*

   (1) ☐ Mediation

   (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)

   (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)

   (4) ☐ Binding judicial arbitration

   (5) ☐ Binding private arbitration

   (6) ☐ Neutral case evaluation

   (7) ☐ Other *(specify):*

   e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.

   f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

   g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**

   ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**

   a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

   b. Reservation of rights: ☐ Yes ☐ No

   c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.

   ☐ Bankruptcy  ☐ Other *(specify):*

Status:

**14. Related cases, consolidation, and coordination**

   a. ☐ There are companion, underlying, or related cases.

      (1) Name of case:

      (2) Name of court:

      (3) Case number:

      (4) Status:

   ☐ Additional cases are described in Attachment 14a.

   b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**15. Bifurcation**

   ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**

   ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**
  a. ☐ The party or parties have completed all discovery.
  b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

  c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**
  a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.
  b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other Issues**
  ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**
  a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

  b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**
  Previous case management orders in this case are *(check one)*:  ☐ none  ☐ attached as Attachment 21.

**22. Total number of pages attached *(if any)*:** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____      ▶ _____
      (TYPE OR PRINT NAME)                           (SIGNATURE OF PARTY OR ATTORNEY)

_____      ▶ _____
      (TYPE OR PRINT NAME)                           (SIGNATURE OF PARTY OR ATTORNEY)
                                           ☐ Additional signatures are attached

# Alternative Dispute Resolution (ADR)
# Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint. (CRC 201.9(c))

**Superior Court of California**
**County of San Francisco**

ADR-1   10/07 (ja)                                          Page 1

# Introduction

**Did you know that most civil lawsuits settle without a trial?**

**And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?**

**These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.**

**In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.**

**ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.**

## Advantages of ADR

**ADR can have a number of advantages over a lawsuit.**

- ***ADR can save time.*** **A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.**

- ***ADR can save money.*** **Court costs, attorneys fees, and expert fees can be saved.**

- ***ADR can be cooperative.*** **This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.**

- ***ADR can reduce stress.*** **There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.**

- ***ADR encourages participation.*** **The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.**

- ***ADR is flexible.*** **The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.**

- ***ADR can be more satisfying.*** **For all the above reasons, many people have reported a high degree of satisfaction with ADR.**

01/07/2008 09:34 FAX  14153510       NATIONWIDE                              009/021

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

# Disadvantages of ADR

**ADR may not be suitable for every dispute.**

- **If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.**

- **There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.**

- **The neutral may charge a fee for his or her services.**

- **If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.**

- **Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.**

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy. Attorneys are encouraged to share this guide with clients. By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1) Judicial Arbitration
2) Mediation
3) The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case. When the Court orders a case to arbitration it is called judicial arbitration. The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## Operation

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## Cost

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.


## MEDIATION

## Description

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case. Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions. Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes. An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts. Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties. A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation. The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial. Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110). Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by the court pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $200 per party administration fee, parties select a specific mediator from the list of court approved mediation providers. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org, or you may call BASF at 415-782-9000.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $200 per hour to $400 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $200 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

## EARLY SETTLEMENT PROGRAM

### Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

### Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If a matter is assigned to the ESP by the Court, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial. The settlement conference is typically held 2 to 3 months prior to the trial date. The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP. All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference. All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference. If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco. Parties who meet certain eligibility requirements may request a fee waiver. For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA 94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672